UNITED STATES, Appellee

v

THOMAS P. MLADJEN, Private, U. S. Marine Corps, Appellant

19 USCMA 159, 41 CMR 159

No. 22,133

December 24, 1969

*Lieutenant Scott M. Feldman,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain Frank A. Nelson,* JAGC, USN.

*Captain Charles E. Patterson,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche,* USMC, and *Captain Lester G. Fant, III,* USMCR.

## Opinion of the Court

QUINN, Chief Judge:

The accused was convicted by a general court-martial convened in Okinawa of a number of offenses in violation of the Uniform Code of Military Justice. His sentence extends to a dishonorable discharge, total forfeitures, and confinement at hard labor for four and one-half years. We granted review to consider his contention that he was denied a speedy trial.

From the chronology of events, which is set out in the Appendix, it appears that on December 22, 1967, the accused was apprehended for an unauthorized absence. He attempted to escape, but was recaptured. At the time of his apprehension, the accused had possession of a false identification card and carried a concealed weapon. He was confined in the Camp Butler Brig, and later in the Joint Services Stockade, on charges of un-

160

authorized absence, wrongful possession of an identification card, impersonation of a noncommissioned officer, attempted escape, and carrying a concealed weapon. By January 4, 1968, these charges were referred to a special court-martial for trial. Before the case came up for trial, however, agents of the Office of Naval Intelligence conferred with the special court-martial authority. They were investigating the break-in of a Government warehouse and the larceny of pistols and eleven hundred identification cards that had taken place in November, and their investigation had produced substantial information implicating the accused in these offenses. As a result of his conference with the agents, the convening authority determined to delay the special court-martial trial to await completion of the ONI investigation.

On completion of the ONI investigation, other charges, including larceny and wrongful sale of military property, were filed against the accused. The later charges were combined with the previous charges, and, after an Article 32 investigation, were forwarded by the special court-martial authority to the general court-martial authority with recommendation for trial by general court-martial. The trial began on June 27, 1968.[1]

Appellate defense counsel contend that the interval of time between confinement and trial was ▪ inexcusably long and thereby denied the accused a speedy trial. The argument disregards the fact there were two sets of charges against the accused. Each set of charges involves a different time of beginning and different steps in the course that brought them to trial. See United States v Goode, 17 USCMA 584, 38 CMR 382. The accused's confinement on December 22, 1967, on the original charges, marked the beginning of the period for which the Government was accountable in determining whether he was deprived of a speedy trial as to those charges. United States v Weisenmuller, 17 USCMA 636, 38 CMR 434; United States v Smith, 17 USCMA 427, 38 CMR 225. The other charges, however, were still under investigation, and a period of investigation is normally not part of the period for which the Government is accountable in determining the timeliness of prosecution, unless the suspect or accused is confined or restrained in connection with those charges. See United States v Feinberg, 383 F2d 60 (CA2d Cir) (1967), certiorari denied, 389 US 1044, 19 L Ed 2d 836, 88 S Ct 788 (1968); United States v Deloney, 389 F2d 324 (CA 7th Cir) (1968), certiorari denied, 391 US 904, 20 L Ed 2d 417, 88 S Ct 1652 (1968). Even assuming the entire period is a single unit (see United States v Wilson, 10 USCMA 337, 27 CMR 411), the steps taken by the Government to bring all the charges to trial were not unreasonable or oppressive. Shortages of personnel, human error, and equipment failures, such as those reflected in the chronology of events of April, especially in a foreign country, cannot be ignored in considering the reasonableness of the period of time required for completion of essential steps in bringing a case to trial.

---

[1] About one month before trial, the accused was retransferred from the Joint Services Stockade to the Camp Butler Brig. The confinement officer admitted the transfer was made in anticipation of the annual inspection by the Department of the Army Provost Marshal General's Office and for the purpose of avoiding explanation of the length of the accused's pretrial confinement. A transfer for this purpose is reprehensible and perhaps should be the occasion for disciplinary action. It is, however, manifest that the transfer was not made to harass the accused. On the day of the transfer, the accused's case was noticed for trial, but defense counsel had another case scheduled and, therefore, requested postponement. A few days later, the accused was returned to his regular place of confinement. The record of trial demonstrates he incurred no harm as a result of the transfer.

United States v Brown, 13 USCMA 11, 14, 32 CMR 11.

Apart from the timeliness of the various steps in the pretrial proceedings, the accused contends he was the victim of a violation of Article 10, Code, supra, 10 USC § 810, in that, while in confinement, he was not timely advised as to the nature of the offenses with which he was charged. Without defense objection, an ONI agent testified he was informed by a police officer, who participated in the accused's apprehension, that at the time of apprehension he informed the accused of "his rights under Article 31, and his right to consult with an attorney." The Government maintains that, since advice under Article 31 includes a statement of the "nature of the accusation," the record of trial amply supports a conclusion that the accused had timely notice of the offenses for which he was confined. Appellate defense counsel, however, challenge the competency and the sufficiency of the ONI agents' testimony. Judge Kiracofe, writing for a ■ unanimous board of review, ■ concluded that since the accused was apprehended in the commission of several of the offenses there was no prejudice in the failure to inform him specifically that these offenses were the occasion for his confinement. See United States v Tibbs, 15 USCMA 350, 35 CMR 322. As to the second set of charges, on January 31, the accused was informed by ONI agents of those charges then under investigation; and on March 4, he was formally advised of the new charges that had been sworn to that day. The timeliness of the notice of these offenses manifestly cannot be measured by the December 22d date of confinement since the accused was already in confinement on the first set of charges. As to the later charges, therefore, we perceive no violation of the Article 10 requirement that "when . . . [an accused] is placed in arrest or confinement prior to trial, immediate steps should be taken to inform him of the specific wrong of which he is accused."

Finally, the accused maintains that Article 33, Code, supra, 10 USC § 833, was violated in that no ■ timely report was submitted to the general court-martial authority regarding the delay in the proceedings against him. Since the accused was initially confined and held for trial by special court-martial Article 33 was inapplicable to the first set of charges. When it was determined that the other charges required trial by general court-martial, the accused's commander forwarded a report to the general court-martial authority. According to the chronology, this report was submitted within eight days of receipt of the Article 32 investigation recommending trial by general court-martial. However, even if we assume the special court-martial authority should have anticipated the probability of a general court-martial and, therefore, submitted a report at an earlier time, the record of trial discloses no basis for a conclusion of prejudice to the accused. United States v Tibbs, supra.

The decision of the board of review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in the result).

I concur in the result.

This Court has, on numerous occasions, been called upon to determine whether an accused's right to a speedy trial has been violated.[1] In most case the question is not easily resolved, since the issue of speedy trial and denial of due process are frequently inextricably bound together and the line of demarcation is not always clear. United States v Schalck, 14 USCMA 371, 34 CMR 151. The fact that my brothers and I are oftentimes in disagreement in this area causes me

---

[1] See Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Military Due Process, Speedy Trial, pages 669–672.

grave concern, for, in most instances, the issue is avoidable through the simple expedient of proper adherence by the Government to the specific provisions of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively. Congress intended these Articles to give to the accused in court-martial trials a speedy trial. Speedy trial is important as there is no provision in military law that adequately provides for release before trial.

The case at bar is a perfect example of the difficulty entailed in making such a determination. The charges for which the accused was confined were initially referred to a special court-martial within thirteen days of his apprehension and confinement. It might be successfully argued that Article 10[2] had been complied with. Article 33[3] was not then applicable because only a special court-martial was contemplated. However, four days later, a determination was made by the Government to delay this trial in view of the development of information which implicated the accused as a prime suspect in a breaking and entering case. Further investigation was necessary. Additional charges and specifications were not preferred for fifty-six days. The report of the subsequent Article 32 investigation was not completed and forwarded with a recommendation for trial by general court-martial until the passage of another sixty-four days.[4] At this later period of time, Article 33 was legally operative. In order to contend that the provisions of Article 33 were complied with, since the case was referred to the officer exercising general court-martial jurisdiction six days after the Article 32 report was completed, it is necessary to accept the Government's position that all during the proceeding time the accused was being held for trial by special court-martial and that the delay in bringing the case to trial was justified by the need to investigate the additionally suspected offenses and to try them all at one time. This, in my view, demonstrates an utter lack of regard for the spirit of the law and the intent of Congress when it considered its enactment. See United States v Hounshell, 7 USCMA 3, 7, 8, 21 CMR 129; cases cited in Tedrow, Digest, supra.

Apparently, someone in the military organization was also of this belief for the record reflects that during the period after the case had been referred to trial by general court-martial and the trial itself, the accused was moved from the Joint Services Stockade to the Camp Butler Brig for a three- or four-day period in anticipation of the annual inspection by the Department of the Army Provost Marshal General's office and for the admitted purpose of avoiding explanation of the length of the accused's pretrial confinement. Compliance with the Code would obviate the need for such action.

I concur in the result in this case.

---

[2] **Art. 10. Restraint of persons charged with offenses.**

"Any person subject to this chapter charged with an offense under this chapter shall be ordered into arrest or confinement, as circumstances may require; but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

[3] **"Art. 33. Forwarding of charges.**

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

[4] The trial did not take place until the passage of an additional fifty-one days.

## APPENDIX
### Chronology of Events

| Date | Events |
| --- | --- |
| **1967** | |
| November 10 | Housebreaking and theft at Building 3419, Camp Schwab. |
| November 11 | Unlawful entry discovered. Marine Corps Criminal Investigations Detachment investigation discloses no suspects. |
| November 25 | Housebreaking and theft at Building 3437, Task Organized Supply Section, Camp Schwab. |
| November 26 | Office of Naval Intelligence starts its investigation. |
| December 18 | Accused absented himself without authority. |
| December 22 | Accused apprehended and confined in Camp Butler Brig to await disposition of charges of unauthorized absence, wrongful possession of Marine Corps identification cards, impersonating a noncommissioned officer, attempted escape from custody and carrying a concealed weapon. |
| December 24 | Search made of house occupied by accused. |
| **1968** | |
| January 4 | Accused referred to special court-martial on the above charges. |
| January 8 | Trial on above charges delayed because ONI developed information which implicated accused as a prime suspect in breaking and entering case. Additional charges could not be preferred until investigation completed. |
| January 13 | Accused filed request through appointed defense counsel of special court-martial for appointment of Major Mog of the Air Force Legal Office at Kadena, Okinawa, as individual counsel. |
| January 19 | On receipt of accused's letter requesting individual defense counsel, the Brigade Staff Legal Officer telephoned the Air Force Air Division to determine availability of Major Mog. He was informed that "the General" would probably not make the Major available. |
| | In anticipation of rejection of the accused's request for Major Mog, First Lieutenant Flournoy, a certified counsel, was "informally" designated to assist the accused. |
| January 26 | Air Force Air Division certified that Major Mog was not available as individual counsel for the accused. |
| January 27 | Accused transferred from Camp Butler Brig to the Joint Services Stockade. |

| Date | Events |
|---|---|
| **1968** | |
| January 27th or 29th | Laboratory report received on a pistol traced from the accused to Moore, a person implicated in the larceny under investigation. |
| January 31 | Accused interrogated and advised he was to be questioned as a suspect in housebreaking of Building 3437 at Camp Schwab, theft, sale, and possession of military property without proper authority. He requested Major Mog, an Air Force lawyer, as counsel and interrogation immediately terminated. |
| February 6th or 7th | Interim ONI report by the investigating agent submitted for typing. |
| February 9 | Endorsement of Commanding General, 9th Marine Amphibious Brigade on CG 313th Air Division's letter of January 26, advising accused of nonavailability of Major Mog. |
| February 9 | Lieutenant Flournoy officially made available as individual defense counsel for the accused. |
| February 23 | Interim ONI investigation report submitted to Commanding Officer, 26th Regimental Landing Team (Rear). Investigation continued to recover stolen property. |
| February 28 | Lieutenant Flournoy filed request with the special court-martial convening authority for trial of the charges then pending. The legal officer to the convening authority telephoned the Brigade Legal Officer and was advised that if the accused was suspected of other offenses "these offenses would have to be brought to trial at the same time . . . and that they should take all the steps necessary to get any other offenses referred." (There is no indication of an official decision on the accused's request.) |
| March 2 | The accused was informed that an Article 32 would be conducted on all charges pending against him. |
| March 4 | Additional charges and specifications preferred. |
| March 6 | Major Snyder appointed Article 32 Investigating Officer by Commanding Officer, RLT–26 (Rear). |
| March 14 | Article 32 hearing opened. Accused represented by Lieutenant Flournoy. |
| March 18 | Article 32 hearing adjourned. |
| March 20 | Article 32 investigation reopened and closed. |
| March 27 | Rough draft of Article 32 record given to Investigating Officer for his approval and recommendations. |
| April 1 | Investigating Officer approved rough draft of record and submitted his report and recommendations. |
| April 1–16 | Article 32 record typed on reproduction mats. |

| Date | Events |
|---|---|
| 1968 | |
| April 17 | It was discovered that the wrong typewriter ribbon was used and the mats would not reproduce legible copies. |
| April 17–23 | Lack of adequate materials and facilities on Okinawa caused difficulty in reproducing mats containing record of hearing. |
| April 23–27 | Lack of reproduction paper and inoperable reproduction machines on Okinawa caused difficulty in reproducing exhibits. |
| April 27–30 | Article 32 investigation report completed. |
| April 30 | Captain Golden made available to represent accused. |
| May 1 | Article 32 report sent to Colonel Erwin for his endorsement. Copies of Article 32 record sent to accused's counsel. |
| May 6–9 | Defense counsel on temporary active duty to Vietnam. |
| May 7 | Colonel Erwin signed his endorsement and recommendations for trial. |
| May 8 | Trial counsel received Colonel Erwin's endorsement. |
| May 13–14 | Defense counsel at Formal Board of Investigation. |
| May 14 | New charge sheet typed. |
| May 15 | Staff legal officer's advice completed and reproduced. |
| May 15 | New charge sheet sent to RLT–26 (Rear) for accused's commanding officer to inform him of the charges against him. |
| May 15–17 | Defense counsel engaged in preparation of general court-martial and special court-martial cases scheduled for trial. |
| May 17 | Trial counsel went to Vietnam. |
| May 18 | Commanding General signed endorsement on the charge sheet referring case to trial. |
| May 20 | Defense counsel at Article 32 investigation of another case. |
| | Accused served with the charge sheet. |
| May 21 | Trial counsel returned from Vietnam. |
| May 22 | Trial counsel informed defense counsel that trial was scheduled for May 27, 1968. |
| May 23 | Accused transferred to Camp Butler Brig. |
| May 24 | Defense counsel requested delay. Asked for June 10, 1968, as trial date. |
| May 26 or 27th | The accused retransferred from Camp Butler Brig to Joint Services Stockade. |
| May 27 | Defense counsel at trial of another general court-martial. |

| Date | Events |
|------|--------|
| **1968** | |
| May 28 | Defense counsel at trial of a special court-martial. |
| | Defense counsel informed trial counsel he would not be ready to try accused's case until last week in June. |
| June 5 | Defense counsel at Article 32 investigation of another case. |
| June 11 | Trial date set for June 27, at defense counsel's request. |
| June 14–19 | Defense counsel on temporary active duty to Japan. |
| June 27 | First day of trial of case. |