The decision of the United States Army Court of Military Review is affirmed.

**UNITED STATES, Appellee,**

v.

**Robert R. YOUNG, Jr., Private, U.S. Army, Appellant.**

No. 29,250.

U. S. Court of Military Appeals.

July 11, 1975.

*Captain Ronald Lewis Gallant* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. DeFiori* and *Captain Ward Mundy.*

*Captain Raymond Michael Ripple* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen* and *Captain Robert B. Kurzweil.*

OPINION OF THE COURT

FERGUSON, Senior Judge:

The accused was convicted by a general court-martial in accordance with his pleas of an unauthorized absence and three specifications of uttering worthless checks with the intent to defraud in violation of Articles 86 and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 923a. He was sentenced by the military judge to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $200 pay per month for 6 months, and reduction to the lowest enlisted grade. The convening authority reduced the confinement to 4 months and the forfeitures to $200 per month for 4 months but otherwise approved the findings and sentence. Both the findings and sentence as approved by the con-

vening authority were approved by the Court of Military Review. We granted review to consider the issue of whether the military judge improperly denied a motion to dismiss on the grounds the accused was denied a speedy trial.

The parties agree the accused was placed in pretrial confinement on December 13, 1972, and was brought to trial on May 11, 1973. Thus, the period of the accused's pretrial confinement extended to 149 days and under the doctrine of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), a denial of a speedy trial is presumed.[1] However, as we subsequently noted in *United States v. Marshall*, 22 U.S.C. M.A. 431, 434, 47 C.M.R. 409, 412 (1973):

> Under *Burton*, the Government may still show diligence, despite pretrial confinement of more than 3 months, in such cases as those involving problems found in a war zone or in a foreign country, *United States v. Prater*, 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971); *United States v. Mladjen*, 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969), or those involving serious or complex offenses in which due care requires more than a normal time in marshaling the evidence, or those in which for reasons beyond the control of the prosecution the processing was necessarily delayed.

The Government submits the present case involves the factors enumerated in *Marshall* which will justify a delay in excess of 90 days. We disagree.

On October 17, 18 and 19, 1972, the accused uttered three worthless checks to the First National City Bank, Nagoya, Japan. He was subsequently tried at Fort Buckner, Okinawa Prefecture, Japan, for these three offenses and an unauthorized absence. On appeal as at trial the Government submits the necessity to resolve the question of jurisdiction with Japan justified the delay.

Article VI, Treaty of Mutual Cooperation and Security with Japan, Jan. 19, 1960, [1960] 2 U.S.T. 1632, T.I.A.S. No. 4509, provides for a separate agreement as to the status of United States armed forces in Japan. Pursuant to this article, the United States and Japan entered into such an agreement.[2] Article XVII of the agreement defines the various areas of jurisdiction, and the parties agree that Japan had the right to exercise primary jurisdiction over the offenses of uttering worthless checks. The agreement also provides for the waiver of primary jurisdiction:[3]

> If the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable. The authorities of the State having the primary right shall give sympathetic consideration to a request from the authorities of the other State for a waiver of its right in cases where that other State considers such waiver to be of particular importance.

In the agreed minutes to the agreement[4] it is noted under article XVII that the "[m]utual procedures relating to waivers of the primary right to exercise jurisdiction shall be determined by the Joint Committee." Agreed view number 40 provides:[5]

> When written notification has been made to either United States or Japanese authorities by the authorities of the other State of the commission of an alleged offense by a member of the United States Armed Forces, the civilian compo-

---

1. The *Burton* speedy trial rule has been modified to cover a period of 90 days rather than 3 months. *United States v. Driver*, 23 U.S.C. M.A. 243, 49 C.M.R. 376 (1974).

2. Agreement Under Article VI of the Treaty of Mutual Cooperation and Security with Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, Jan. 19, 1960, [1960] 2 U.S.T. 1652, T.I.A.S. No. 4510.

3. *Id.* art. XVII, para. 3(c).

4. Agreed Minutes to the Agreement Under Article VI of the Treaty of Mutual Cooperation and Security with Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, Jan. 19, 1960, [1960] 2 U.S.T. 1749, T.I.A.S. No. 4510.

5. U.S. Forces Japan Pamphlet 125–1 Criminal Jurisdiction in Japan, at 22–24 (Sept. 1, 1970).

nent, or a dependent, over which Japan has the primary right to exercise jurisdiction, Japan shall, through the Ministry of Justice, advise the Legal Office of the Headquarters in Japan of the branch of the armed forces of which the accused is a member, whether it will exercise jurisdiction by bringing an indictment in the case. If the above advice is not received by the Legal Office concerned within the periods set out below, or if notice is received that Japan will not bring an indictment, the United States may exercise jurisdiction in any such case. . . .

. . . Nothing in the foregoing shall be construed as preventing the United States authorities from accomplishing all of the pre-trial procedures in the case required by military law pending the expiration of the time periods set out above.

This agreed view sets forth various time limits for the receipt of the advice from the Japanese authorities. The time limit for the offenses involved in the present case is 20 days with a provision for a 10-day extension.

The parties entered into a stipulation of fact at trial reflecting the Government's attempts to obtain jurisdiction from the Japanese authorities. Sometime after January 3, 1973, the Government made such an attempt to notify the Japanese authorities in Okinawa.[6] However, the prosecutor for Okinawa refused to accept notification expressing the view that the prosecutor for Nagoya should exercise jurisdiction. At an unspecified time thereafter the prosecutor for Nagoya was contacted but he refused to accept notification pending further investi-gation. Although several efforts were made to encourage the Japanese authorities to make a decision as to the question of jurisdiction, the United States authorities were not notified until April 5, 1973, that the Japanese authorities had decided to waive jurisdiction. During this period the defense counsel made numerous requests that the appellant be released from pretrial confinement. The case was referred to trial on April 11, 1973, and trial was held on May 11, 1973.

Under the circumstances we are unable to conclude the Government has met its heavy burden. While the present case involved a question of jurisdiction, we note that approximately 3 months was consumed in resolving this question although the procedure established by the United States and Japan contemplated a maximum of 30 days.[7] Furthermore, agreed view number 40 permits the United States to exercise jurisdiction if the Japanese authorities do not respond within the specified time limits. Under the terms thereof, the United States is not prohibited from preparing a case for trial pending a request for waiver of jurisdiction.[8] Thus, the treaty between the United States and Japan and its attendant agreements did not necessitate the excessive pretrial confinement encountered in the present case.

The decision of the Court of Military Review is reversed and the findings of guilty and the sentence are set aside. The charges are ordered dismissed.

Judge COOK concurs.

Chief Judge FLETCHER did not participate in the decision of this case.

6. Although the accused was confined on December 13, 1972, notification was not attempted until sometime after January 3, 1973. Whether the Government possessed sufficient information to attempt notification prior to the date is not clear from the record. However, we note that the Government has the burden of proof in such matters.

7. While the prosecutor for Okinawa refused to accept notification, the delay in the present case is unreasonable even if the period is extended on the basis of this refusal.

8. Indeed the applicable military regulation states that the preliminary steps for trial by court-martial will be taken where warranted pending a request for a waiver of jurisdiction. Furthermore, this regulation permits trial by court-martial if notification is not received from the Japanese authorities within the applicable period. Paragraphs 23a(2)–(3)a, USARJ Reg. 27–50 (Dec. 22, 1972).