### UNITED STATES

v.

**Kenneth C. STUBBS, 556 02 7651, Mess Management Specialist Seaman Recruit (E–1), U. S. Navy.**

**NCM 77 0054.**

U. S. Navy Court of Military Review.

5 May 1977.

LT Michael E. Blount, JAGC, USNR, Appellate Defense Counsel.

LT Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GLASGOW, JJ.

CEDARBURG, Chief Judge:

Pursuant to his pleas at a special court-martial bench trial, appellant stands convicted of: violating Article 1151 of the U.S. Navy Regulations by possessing marijuana (Specification 1 of the original Charge) and of failing to obey a lawful order (Additional Charge I), both in violation of Article 92, UCMJ, 10 U.S.C. § 892; two specifications of breaking restriction (Additional Charges II and IX), in violation of Article 134, UCMJ; two specifications of disrespect to a commissioned officer (Additional Charges III and VII), in violation of Article 89, UCMJ; and disrespect toward and failure to obey a lawful order from a superior petty officer (Specifications 1 and 2 of Additional Charge VI), both in violation of Article 91, UCMJ. The military judge sentenced appellant to confinement at hard labor for three months, forfeiture of $200.00 pay per month for three months and a bad conduct discharge. The reviewing authorities below approved the findings and sentence as adjudged.

Appellant assigns the following errors:

I. THE COURT-MARTIAL LACKED PERSONAL JURISDICTION OVER THE APPELLANT IN THAT HE HAS ENLISTED, WITH THE ACTIVE ASSISTANCE OF THE NAVY RECRUITER, IN VIOLATION OF APPLICABLE RECRUITING REGULATIONS.

II. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL.

I

Appellant's contention that his court-martial lacked personal jurisdiction

over him because of recruiter misconduct was first raised at trial pursuant to a motion to dismiss. In support of that motion appellant testified that, at the time he enlisted, he informed his recruiter that he had a "bad knee", and that in response to this the recruiter advised appellant to conceal the problem until his enlistment was effected. (R. 8). Having the obligation to affirmatively establish jurisdiction once this issue had been raised by the defense, *see United States v. Russo,* 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975), the Government offered the testimony of the recruiter who stated that while he could not specifically recall appellant, he had never advised a prospective enlistee to lie or conceal information in connection with his enlistment. (R. 22). The proper resolution of this matter depended upon which of these two witnesses was to be believed since it may be assumed that: (1) appellant's knee condition as he described it would have been a disqualifying defect (COMNAVCRUITCOM Instruction 1130.8; R. 26); and (2) that had the recruiter furthered appellant's enlistment by advising him to conceal this defect as appellant alleged, Article 84, UCMJ, would have been violated and the personal jurisdiction over appellant would have been seriously called into question. *United States v. Russo, supra.* The military judge who had an opportunity to see and hear these witnesses and to assess their credibility apparently accorded greater weight to the recruiter's testimony and denied appellant's motion. We find that the Government sustained its burden and affirmatively established that appellant's court-martial had personal jurisdiction to try him. Assignment of Error I is therefore denied.

## II

On 16 April 1976, appellant was confined at U. S. Fleet Activities, Yokosuka, Japan.

The parties agree that this confinement was imposed in order to assure appellant's presence pending a determination by the Government of Japan, pursuant to Article XVII of the Status of Forces Agreement[1], on whether to exercise or to waive its primary jurisdiction over a 9 April 1976 marijuana possession offense. On 17 May 1976, the United States was informed that the Government of Japan decided to waive jurisdiction in this matter; whereupon, appellant was released from confinement. On 19 May 1976, the original Charge was preferred with Specification 1 thereof alleging appellant's 9 April 1976 possession of marijuana.

On 22 May 1976, for offenses unrelated to those charged in the case *sub judice,* appellant was awarded nonjudicial punishment which included restriction for a period of 60 days. Afterwards on 22 May 1976, and between that date and 3 June 1976, appellant allegedly committed additional offenses in consequence of which: Additional Charges I and II were preferred on 1 June 1976; appellant was placed in pretrial confinement on 4 June 1976; and Additional Charges III through X were preferred between 10 and 15 June 1976. Trial was set for 20 July 1976.[2] However, on 19 July 1976, the defense requested and was granted a continuance until 26 July 1976 for the purpose of preparing a motion to dismiss for lack of jurisdiction. At an Article 39(a), UCMJ, session held on that latter date, the defense so moved. Following delays occasioned for the most part by Government efforts to fashion a response, the court reconvened on 31 August 1976, additional matter was presented, and the motion was denied. The defense then moved to dismiss for lack of speedy trial, requesting a delay until the following day, 1 September 1976, to prepare for the motion. After the presentation of evidence and argument, and several recesses in order to permit the

1. Agreement Under Article VI of the Treaty of Mutual Cooperation and Security with Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, 19 January 1960 [1960] 2 U.S.T. 1652, T.I.A.S. No. 4510.

2. Specification 2 of the original Charge and Additional Charges IV, V, VIII and X were withdrawn at trial.

judge to consider the matter, the court reconvened on 3 September 1976; the speedy trial motion was denied and appellant entered his pleas.

From these facts, appellant perceives a total pretrial confinement exceeding 90 days and concludes that the presumption announced in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971) and modified in *United States v. Driver,* 23 U.S. C.M.A. 243, 49 C.M.R. 376 (1974) is applicable to his case and requires dismissal of all charges of which he stands convicted. We disagree.

■ At the outset it is essential to emphasize that a period of pretrial confinement which both triggers the *Burton* presumption and eludes justification by "really extraordinary circumstances", *see United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973), is not necessarily fatal to all charges of which an accused has been adjudged guilty. Each such charge involves a separate determination of timeliness for speedy trial purposes. When applicable to a given period of pretrial confinement, the *Burton* presumption will dictate dismissal of only those charges upon which that confinement was, in whole or in part, premised. *See United States v. Ward,* 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975); *United States v. Johnson,* 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974) and *United States v. Mladjen,* 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969). In the case *sub judice,* the entire 122 day period appellant spent in pretrial confinement was not attributable to each and every charge and specification of which appellant stands con-

victed.[3] Specifically, appellant was convicted on charges that must be divided into two categories *vis a vis* his pretrial confinement. The first category consists of the original Charge and Specification 1 thereunder embodying the 9 April 1976 marijuana offense; the second category consists of the Additional Charges and their Specifications embodying the remaining offenses to which appellant pled guilty. Only the charge embraced by the first of these categories can be connected with the 31 day initial period of confinement (16 April to 17 May 1976) since all of the Additional Charges allege offenses committed between 22 May and 3 June 1976, i. e., well after the initial confinement ceased. The Additional Charges then could have provided a premise only for the 91 day long second period of pretrial confinement (4 June to 3 September 1976).

■ With respect to the Additional Charges it is clear therefore that our determination of the timeliness of appellant's trial for the offenses included within this category of charges is limited to an analysis of the Government's accountability solely for the 4 June to 3 September pretrial confinement.[4] Before the *Burton* presumption could arise in this instance the extension of appellant's confinement beyond 90 days would have had to be for reasons other than "defense requests for a continuance". *United States v. Burton* and *United States v. Marshall,* both *supra.* As noted above, on 19 July 1976 the defense secured a 6 day postponement of appellant's originally scheduled 20 July 1976 trial in order to gain time to prepare a motion for dismissal. In-

3. The restriction served by appellant from 22 May to 3 June 1976 was premised upon none of the charges at issue in the case *sub judice* and was solely attributable to unrelated offenses and the imposition of nonjudicial punishment resulting therefrom. While we recognize that restriction may, in a proper case, be counted as confinement for purposes of the *Burton* presumption, *see United States v. Schilf,* 1 M.J. 251 (1976), this is not such a case and we therefore reject out of hand any attempt by appellant to include these 12 days of restriction as part of the total period of pretrial confinement with which we must be concerned in resolving his second assignment of error. *See*

*United States v. Miller,* 25 U.S.C.M.A. 167, 54 C.M.R. 275, 2 M.J. 77 (1976) and *United States v. Hopkins,* 54 C.M.R. 352, 2 M.J. 1032 (A.C.M.R.1976).

4. It is unnecessary to a proper disposition of this case to find that appellant's pretrial confinement for purposes of the *Burton* presumption finally terminated at any time prior to the 3 September 1976 Article 39(a) session at which appellant's guilty pleas were entered and accepted and his conviction adjudged, *United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974).

asmuch as this 6 day delay was occasioned in the midst of the second period of confinement, for no reason other than the defense request for a continuance, the *Burton* presumption is simply inapplicable to that confinement which, in the absence of the instant defense initiated continuance amounts to no more than 85 days. (4 June to 19 July 1976 and 26 July to 3 September 1976) In the absence of this presumption, we find nothing in the record which would indicate that the Government committed willful, purposeful, vexatious, or oppressive delay or failed to proceed with reasonable diligence in bringing appellant to trial on the Additional Charges. *United States v. Brown,* 13 U.S.C.M.A. 11, 32 C.M.R. 11 (1962); *United States v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973); *United States v. Aragon,* 51 C.M.R. 672, 1 M.J. 662 (1975), *pet. den.,* No. 31,889 (U.S. C.M.A. 19 April 1976).

■ Remaining then for consideration is the original Charge and Specification 1 thereunder alleging appellant's 9 April 1976 possession of marijuana. The parties agree that under the Status of Forces Agreement with Japan, Japan had the primary right to try appellant for that offense. At trial, the parties stipulated: that appellant was confined on 16 April 1976 at the U. S. Fleet Activities, Yokosuka, to assure his presence in the event Japan decided to try him; that Japan was sent notification of appellant's status on 20 April 1976; and that appellant remained confined until the cognizant military authorities received notification on 17 May 1976 that Japan chose to waive its primary jurisdiction in this matter. The issue thus posed is whether any part of this 31 day period appellant spent confined by U. S. military authorities constitutes pretrial confinement for which the Government in the case at bar should be held accountable; that is, can any segment of that initial period of confinement be added to the maximum portion of the second period of confinement for which the Govern-

ment could conceivably bear responsibility (85 days) and thereby trigger the *Burton* presumption with respect to the original Charge and Specification 1 thereunder. We think not.

Pursuant to the Agreed Minutes to the Status of Forces Agreement with Japan [5] procedures relating to the decision to exercise or waive the primary right to jurisdiction have been established and require in pertinent part that:

When written notification has been made to either United States or Japanese authorities by the authorities of the other State of the commission of an alleged offense by a member of the United States Armed Forces, the civilian component, or a dependent, over which Japan has the primary right to exercise jurisdiction, Japan shall, through the Ministry of Justice, advise the Legal Office of the Headquarters in Japan of the branch of the armed forces of which the accused is a member, whether it will exercise jurisdiction by bringing an indictment in the case. If the above advice is not received by the Legal Office concerned within the periods set out below, or if notice is received that Japan will not bring an indictment, the United States may exercise jurisdiction in any such case. The periods within which advice shall be given by Japan of the exercise of its jurisdiction by bringing an indictment in any such case are as follows:

\* \* \* \* \* \*

B. For offenses punishable under Japanese law by confinement for more than 6 months, except the offenses listed above ....... 20 days after date of original notification of alleged offense

If the Ministry of Justice, during the periods set out above, notifies the Legal

---

**5.** Agreed Minutes to the Agreement Under Article VI of the Treaty of Mutual Cooperation and Security with Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, 19 January 1960 [1960] 2 U.S.T. 1749, T.I.A.S. No. 4510.

Office concerned that for special reasons it is desired to reserve decision with respect to Japan's exercise of jurisdiction by bringing an indictment over an offense for which it has primary jurisdiction, the United States will not exercise its jurisdiction until the expiration of . . . ten days beyond the 20 day period specified above for cases relating thereto, or until earlier notice is received that Japan will not bring an indictment in the case.

\*   \*   \*   \*   \*   \*

Nothing in the foregoing shall be construed as preventing the United States authorities from accomplishing all of the pre-trial procedures in the case required by military law pending the expiration of the time periods set out above. [Agreed View Number 40].[6]

The Government accorded primary jurisdiction, therefore, is effectively entitled to a maximum of 30 days during which it must provide notice of its decision to indict or else forfeit its right to proceed in the matter.[7]

The above quoted portion of Agreed View Number 40 clearly indicates that in any case in which Japan retains primary jurisdiction, the United States may exercise its secondary jurisdiction only when it receives notification that Japan will not bring an indictment or when Japan fails to notify the United States of any decision in the matter within 20 days after Japan has received written notification of the offenses, whichever occurs first. That 20 day period is extended to 30 days if Japan notifies the United States that it wishes to invoke the 10 day extension period. In the case *sub judice* the United States sent Japan notification of the 9 April 1976 marijuana offense on 20 April 1976. However, the record fails to reflect the date upon which this notification was actually received by Japan and, hence, the date that began the 20 day period during which Japan had to act in order to preserve its primary jurisdiction.

Furthermore, the record does not reveal whether Japan provided timely notice to the United States in accordance with Agreed View Number 40 of an intention to take advantage of the 10 day extension period. Nevertheless, what does appear in the record is the fact that Japan notified the United States of its waiver decision on 17 May 1976—28 days after the United States first took action to advise Japan of the allegations regarding appellant, and within the maximum period of 30 days to which it was freely entitled under the Status of Forces Agreement. Even assuming the United States allowed Japan to exceed 20 days in reaching its decision without having advised the United States of its intention to do so within 20 days of receiving notice, it was neither unreasonable, impolitic, nor prejudicially erroneous for the United States to refrain, at least until the entire 30 day period had expired, from bringing appellant to trial immediately after the 20th day.

In *United States v. Marshall, supra,* the Court of Military Appeals noted that:

> Under *Burton,* the Government may still show diligence, despite pretrial confinement of more than 3 months [90 days per *United States v. Driver, supra.*], in such cases as those involving problems found in a war zone or in a *foreign country, United States v. Prater,* 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971); *United States v. Mladjen,* 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969), or those involving serious or complex offenses in which due care requires more than a normal time in marshaling the evidence, or those in which *for reasons beyond the control of the prosecution the processing was necessarily delayed.* [emphasis added.]. [*Marshall,* 22 U.S.C.M.A. at 434, 47 C.M.R. at 412].

It is clear that while the Court of Military Appeals in *Marshall* had no intention of establishing a "foreign country exception" to the *Burton* standard, it neverthe-

---

**6.** HQ, U. S. Forces Japan Pamphlet 125–1, Criminal Jurisdiction in Japan, at 22–25 (1 January 1976).

**7.** *Id.*

less has recognized that the situs of a court-martial in a foreign country may cause unusual problems justifying pretrial delay beyond the point, in cases involving pretrial confinement, that would normally trigger the *Burton* presumption. *United States v. Henderson*, 24 U.S.C.M.A. 259, 51 C.M.R. 711, 1 M.J. 421 (1976). *Cf., United States v. Stevenson*, 22 U.S.C.M.A. 454, 47 C.M.R. 495 (1973). Furthermore, "the point of the *Burton* ruling . . . was to establish a standard that included allowances for the several necessary pretrial stages through which a proceeding must progress." *United States v. Marshall*, 22 U.S.C.M.A. at 434, 47 C.M.R. at 412. The above 28 day period which commences with the Government's 20 April 1976 formal issuance of notice to Japan, which includes that period following Japan's receipt of that notice during which the United States was prevented from court-martialing appellant, and which ends with the Government's 17 May 1976 receipt of notification of Japan's waiver of jurisdiction, was a period of delay occasioned solely by reason of the proper invocation of the Status of Forces Agreement with Japan; that is, a period of delay generated by pretrial procedures which posed problems unique to the administration of the military justice system on foreign soil and which cannot be counted among those for which accountability allowance was made in the establishment of the *Burton* ruling. We therefore hold that the 28 days of confinement between 20 April and 17 May 1976 cannot be considered pretrial confinement attributable to Government delay and, hence, cannot be added to the 85 days of pretrial confinement between 4 June and 3 September 1976 for which the Government might be held accountable for purposes of invoking the *Burton* presumption.

The facts upon which this holding is based are clearly distinguishable from those of *United States v. Young*, 23 U.S.C.M.A. 471, 50 C.M.R. 490, 1 M.J. 71 (1975), wherein the Court of Military Appeals held that the *Burton* presumption triggered by a 149 day delay in bringing an accused in pretrial confinement to trial could not be rebutted by the fact that approximately 3 months were spent in resolving whether or not Japan would try certain offenses over which it was accorded primary jurisdiction by the Status of Forces Agreement. The distinguishing circumstances are twofold. First, unlike *Young*, resolution of the concurrent jurisdiction issue in appellant's case was accomplished within the maximum period of 30 days authorized by the Status of Forces Agreement. In *Young*, the military authorities allowed Japan 3 months to achieve the same result; delay exceeding the first 30 days was therefore attributable to the United States and not to the proper application of the Status of Forces Agreement. Secondly, after the waiver of jurisdiction by the Japanese authorities, appellant was immediately released from confinement. In *Young*, despite the same determination by the Japanese authorities, the accused *remained* in confinement for an extended period until trial. Clearly, then, the confinement of the accused Young was not imposed *solely* because of the necessity to assure his presence at a possible trial in a foreign court. That is evident by his continued confinement *after* waiver of jurisdiction by the Japanese. Therefore, the entire period of confinement in *Young* was with a view to trial by court-martial. Here, appellant was held exclusively pursuant to the Status of Forces Agreement to assure his presence at a possible foreign trial. As soon as it was determined that the foreign courts had waived jurisdiction, appellant was released. Accordingly, that initial period of confinement was not confinement with a view to trial by court-martial, and hence not "pretrial confinement" under *Burton*. For these reasons, *Young* is inapposite.

Both parties agree that appellant was initially confined on 16 April 1976 in order to assure his presence in the event Japan decided to exercise its primary jurisdiction under the Status of Forces Agreement. Since appellant remained in confinement while the Government delayed 4 days in initiating the procedures necessary to allow Japan to make that decision, it may be argued that the Government should be held

accountable for at least the first 4 days of appellant's initial period of confinement. Even if we were to agree, the total period of pretrial confinement which would then be attributable to Government delay would amount to no more than 89 days (85 plus 4)—not enough to trigger the *Burton* presumption with respect to that pretrial confinement premised upon and imposed subsequent to the offense alleged in Specification 1 of the original Charge. Absent this presumption, no other reason appears in the record for concluding appellant was denied a speedy trial for that offense. *See United States v. Brown, United States v. Gray,* and *United States v. Aragon,* all *supra.*

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge BAUM and Judge GLASGOW concur.