**UNITED STATES, Appellee,**

v.

**Specialist Four Ron E. MILLER, SSN 451–35–5335, United States Army, Appellant.**

**CM 440526.**

U. S. Army Court of Military Review.

18 Jan. 1982.

Captain Marcus C. McCarty, JAGC, argued the cause for appellant. With him on the brief were Major Raymond C. Ruppert, JAGC, and Captain James A. McAtamney, JAGC.

Captain Mark S. Julius, JAGC, argued the cause for appellee. With him on the brief were Major John T. Edwards, JAGC, and Major John T. Meixell, JAGC.

Before JONES, LEWIS and GARN, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

██ On 1 June 1979, Sin Suk Chol, a Korean "comfort" girl, was killed by the appellant with whom she lived. The appellant was almost immediately apprehended and, on 2 June, was placed in pretrial confinement in a United States facility on the basis of a United States confinement order predicated upon his flight risk.[1] On 14 June, the Republic of Korea notified United States authorities that Korea would exercise its primary jurisdiction over the appellant.[2] On 25 June, the Eighth US Army Staff Judge Advocate notified the confinement facility of appellant's status as a pretrial prisoner under the Status of Forces Agreement.[3]

This case principally involves "double jeopardy" under the Korean Status of Forces Agreement (SOFA) and speedy trial under *United States v. Burton*, 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971). The appel-

1. The official basis for pretrial confinement was as follows:

   "SM has confessed to strangling a Korean national Female on 1 June 1979. SM stated the following to a CID investigator, 'If they are going to put me in a Korea (sic) jail then have them shoot me first', or words to that effect. The extreme gravity of this offense plus SM's being terrified of going to a Korean jail indicate that pretrial confinement is essential to insure SM's presence at trial, and that if SM is not confined, he will flee."

2. In the absence of express or implied agreement to the contrary, an international state has exclusive jurisdiction to punish offenses against its laws within its territory. *Wilson v. Girard*, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957). The Korean Status of Forces Agreement, with agreed minutes, 1966, 17 U.S.T. 1967, T.I.A.S. No. 6127, is such an agreement. It provides in pertinent part for United

States courts-martial to exercise jurisdiction in Korea over United States personnel but preserves, with exceptions not relevant here, Korean primary jurisdiction over offenses like the instant offense.

3. The basis for continued United States custody pending exercise of Korean jurisdiction is found in Paragraph 5c, Article XXII, Korean SOFA, *supra*. What comes through from a reading of paragraph 5 and the agreed minutes to paragraph 9 of Article XXII is the considerable United States interest in the conditions of confinement facilities in which United States personnel may be confined by host-government judicial process. From his statement expressing his anxiety about going to a Korean prison, the appellant was no less interested. This contrasts sharply with appellant's present complaint of "illegal" confinement in the United States facility.

lant was indicted by Korean authorities for murder on 3 July, was tried and convicted in Seoul Criminal Court on 10 and 24 September, and was sentenced on 15 October 1979.[4] On 26 October 1979, Korean authorities imposed martial law. Subsequently, on 15 September 1980, a Korean appellate court held that, as a result of such declaration of the imposition of martial law and the agreed minute to Paragraph 1(b), Article XXII, Korean SOFA,[5] the Republic of Korea had "no further right to jurisdiction over this case." The Korean court went on to set aside the trial court's conviction and dismiss the Korean charges.

Court-martial charges were preferred the same day as the appellate decision was announced. The next day, appellant demanded a speedy disposition of any charges preferred against him and his immediate release from military service.[6] Referral of the charges to an investigating officer under Article 32, Uniform Code of Military Justice, occurred on 19 September, the day of their receipt by the special court-martial convening authority. On 2 October, presumably after preliminary study of the preceding investigations and determination of necessary witnesses and their locations, the investigating officer requested an appropriated fund citation from the general court-martial convening authority for the transportation of out-of-country witnesses back to Korea. The fund cite was furnished on 6 October and the Article 32 hearing scheduled for 27 October. Appellant's counsel requested a hearing either prior to 25 October or after 30 October due to other cases on his calendar. Then, on 23 October, appellant waived an Article 32 investigation.[7] Apparently in anticipation of referral, a 7 November trial date was set on 24 October.

The Staff Judge Advocate, on 30 October, recommended trial by general court-martial on a charge of premeditated murder, which recommendation was immediately approved. A preliminary hearing under the provision of Article 39(a), UCMJ, 10 U.S.C. § 839(a), was held on 6 November with trial following on 7, 10 and 12 November. Pursuant to his negotiated plea, the appellant was found guilty of voluntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919 and sentenced to reduction to the grade of E-1, forfeiture of all pay and allowances and confinement at hard labor for 22 months. The adjudged sentence was approved and credit of 153 days confinement was directed by the convening authority to be applied against the 22 months. The appellant now assigns five principal errors as requiring relief.

## I. Speedy Trial

Appellant claims that the military judge erred in failing to dismiss the specification and charge because the appellant was denied his right to a speedy trial in the sense of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Specifically, he asserts that the entire period from his original entry into pretrial confinement until his court-martial is *"Burton"* time that grossly

---

**4.** Appellant's Korean sentence apparently included confinement for seven years. R. 109.

**5.** The agreed minute provides as follows: "In the event that martial law is declared by the Republic of Korea, the provisions of the Article shall be immediately suspended in the part of the Republic of Korea under martial law, and the military authorities of the United States shall have the right to exercise exclusive jurisdiction over members of the United States armed forces or civilian component, and their dependents, in such part until martial law is ended."

**6.** Appellant's *normal* term of service had expired on 29 July 1980. In anticipation thereof, he requested on 5 June 1980 that he be retained pending final disposition of the appeal of his foreign civilian conviction and completion of ensuing United States administrative action to accomplish his separation from the Army. At the same time, he "certified" that his request was not the result of coercion, force or threat of harm. The obvious motivation for this was to avoid a transfer to Korean post-trial custody. One might also speculate as to the effect appellant's intervening separation might have had upon the Korean appellate court and its application of the SOFA requirement where martial law is declared.

**7.** His waiver was conditioned upon acceptance of his offer to plead guilty to voluntary manslaughter with a limitation on sentence and a proscription against offering evidence on any greater charge.

exceeds the 90 days that *Burton* contemplates as the maximum reasonable period within which to move a case to trial before a presumption of lack of speedy trial arises. Alternatively, he asserts that at least the period from his initial pretrial confinement until his status changed to "SOFA confinement" and from the Korean declaration of martial law until his court-martial combine to raise the presumption under *Burton.* We agree that a 90 day period was exceeded, but disagree that dismissal was required.

■ *Burton* and its progeny contemplate a United States trial and set out a bright line limit within which to accomplish pretrial processing. Consistent with this purpose, defense delays that stay government processing are deducted from the 90 days that *Burton* allows. *See, United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.A. 376 (1974); *United States v. Jones,* 6 M.J. 770 (A.C.M.R.1978). While not deductible for computational purposes within the *Burton* period, truly extraordinary circumstances will serve to meet the government's "heavy burden" to overcome the presumption of lack of speedy trial for exceeding the *Burton* period. *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). The fact that the situs of the offense and the trial is overseas is not *per se* extraordinary. *United States v. Henderson,* 1 M.J. 421 (C.M.A.1976). Nor is the resolution of United States vis-a-vis foreign jurisdiction issues *per se* an extraordinary circumstance. *United States v. Young,* 23 U.S.C.M.A. 471, 50 C.M.R. 490 (1975). Even where extraordinary circumstances exist, the government's actions will be closely scrutinized to insure continued, reasonable diligence.

■ It cannot be denied that the case before us presents extraordinary circumstances. Because of the status of the victim and the non-duty status of the appellant, the case began under Korean primary jurisdiction, although there was a possibility of either express or automatic waiver of that primary jurisdiction under the treaty. Automatic waivers of existing Korean jurisdiction did not occur inasmuch as the Korean government notified United States authorities within the fifteen days allowed by an exchange of notes[8] of its retention of jurisdiction. At this point, the United States was divested of even the possibility of proceeding to a court-martial absent a reversal of position by the Korean government.

As occurred in *United States v. Young, id.,* prosecutorial representatives of sovereign states will, on infrequent occasion, relinquish jurisdiction after initially expressing an intent to assert it. With this in mind, and balancing the importance of a speedy trial against the not insignificant burden of processing a case to a point short of trial, the United States Court of Military Appeals in *Young* struck that balance in favor of the accused. The balance need not, and in our view does not, tip the same way where the foreign sovereign actually exercises its jurisdiction by trial. In such instance, United States authorities, in the absence of contrary indication, may reasonably terminate their processing.

This is all the more the case where, as with Korea, the SOFA also contains a provision proscribing trial of the same accused for the same offense by the second sovereign party in the territory of Korea after he has been tried and acquitted or convicted by the other sovereign. As we shall see below, this SOFA double jeopardy rule does not bar this appellant's trial by court-martial; it does, however, weigh heavily in the determination of the reasonableness of the United States' inaction and whether subsequent events were extraordinary.

As previously noted, the events subsequent to appellant's Korean conviction and imposition of sentence were extraordinary. Those responsible for preferring charges and processing them could not have reasonably contemplated a declaration of martial law by the government of Korea. Further-

8. Exchange of letters on July 9, 1966 between the Minister of Foreign Affairs of the Republic of Korea and the Ambassador of the United States to the Republic of Korea regarding Article XXII and Agreed Minute Re Paragraph 3(b).

more, once martial law had been declared, United States authorities could not have reasonably contemplated that a case like appellant's, wherein sentence was imposed prior to martial law, would be overturned for lack of Korean jurisdiction that existed previously.[9]

Accordingly, we hold that United States authorities acted with reasonable dispatch at each point where action was reasonably required. Appellant's demand for immedi-.ate trial was answered by rapid processing, not delay.

## II. SOFA Double Jeopardy

■ Appellant next asserts that the trial judge erred by failing to dismiss the charge and its specification inasmuch as the United States had no jurisdiction to try the appellant. He bases his claim upon paragraph 8a, Article XXII, SOFA.[10] We hold that this provision of the Korean SOFA, like the comparable one in the Japanese SOFA, does not contemplate every proceeding by a sovereign against one who allegedly violates its penal laws. *See United States v. Cadenhead*, 14 U.S.C.M.A. 271, 34 C.M.R. 51

(1963). Rather it contemplates a consummated, as opposed to incomplete, exercise of criminal jurisdiction. In the instant case, the Korean court determined that an impediment to completion existed under its law that necessitated voiding appellant's Korean conviction *ab initio*. Accordingly, we hold that appellant was not "tried", "convicted" and "sentenced" within the meaning of paragraph 8a, Article XXII, SOFA.[11]

## III. Improvident Plea

■ The appellant next asserts that the military judge erred in finding his plea provident where it was predicated upon a pretrial agreement that conditionally waived investigation of his charges under Article 32, UCMJ. In appellant's view, the conditional waiver of the Article 32 investigation was an illegal condition of the pretrial agreement and void as being against public policy. We disagree. What is against public policy is the imposition by the government of such a requirement. If the waiver is at the initiative of the defense

---

9. While the full *ratio decidendi* of the Korean appellate decision is not apparent from the opinion, it appears to necessarily involve the idea that a trial under Korean law is not concluded until the appeal is complete. Naturally, we defer on this question of Korean domestic law to our korean judicial brothers. We merely observe that it was an unforeseeable windfall to the appellant both from the standpoint of his ultimate sentence and the location where it would probably be served. The Korean decision raises some other interesting possibilities in future cases. Taking the facts of the instant case, what would happen to Korean jurisdiction if martial law were both initiated and terminated during the pendency of the appeal? Would jurisdiction be revived? Martial law having ended after the decision of the Seoul High Court, could the Korean prosecution seek a reversal from the Korean Supreme Court in order to reinstate the findings and sentence of the trial court? Would the Korean courts and executive branch recognize a United States court-martial (with appellate review incomplete) as a "trial" under the SOFA double jeopardy provision where they apparently do not attach such a meaning to a Korean trial? Again, we cite these issues raised by the decision of the Seoul High Court to emphasize the unforeseeability by the United States authorities of that result.

10. The text is as follows:

"Where an accused has been tried in accordance with the provisions of this Article either by the military authorities of the United States or the authorities of the Republic of Korea and has been acquitted, or has been convicted and is serving, or has served, his sentence, or his sentence has been remitted, *or suspended*, or he has been pardoned, he may not be tried again for the same offense within the territory of the Republic of Korea by the authorities of the other State."

11. In so holding, we pass over the issue of whether an individual such as appellant has standing to assert paragraph 8a, Article XXII, SOFA, as a bar to trial. Clearly there is no United States constitutional impediment inasmuch as trial would have been by two separate sovereigns. As regards whether the sovereign parties to the agreement intended to create a right capable of assertion by an individual, a strong argument can be made, with the provision's allowance for a second trial by the sending state *outside* the jurisdiction of the receiving state, that its sole purpose was to foster respect for the judgments of the courts of the contracting states and to afford a basis for international protest between the states.

and is knowingly and intelligently given, it will not void a pretrial agreement or "improvidence" a guilty plea predicated thereon. *United States v. Walls,* 8 M.J. 666 (A.C.M.R.1979), *pet. denied,* 9 M.J. 10 (C.M.A.1980). *But see* the grant for review in *United States v. Peoples,* No. 41852/A.R., 12 M.J. 182 (CMA 1981).

### IV. The Remedy for a "Burton" Violation

■ Appellant asserts that the military judge erred in ruling that the court members should prescribe an appropriate sentence remedy for violation of appellant's right to a speedy trial under the second aspect of *United States v. Burton, supra,* at 172. In our view, the judge did err but only in his finding of a *Burton* violation. As discussed in the factual outline above, the government moved with commendable dispatch immediately upon the announcement of the Korean appellate decision. It required only four days after preferral of charges (three days after appellant's demand for speedy disposition) for the case to be referred for an investigation under Article 32, UCMJ. Manifestly, the investigating officer had to study the various reports of investigation and determine the identity and current location of necessary witnesses. Additionally, he accomplished notification of the investigation to the accused. Thirteen days were consumed in this process. He requested fiscal authority for overseas witness transportation, which authority was granted in four days (with an intervening

weekend). A hearing was set for 21 days after that, undoubtedly the minimum reasonable time to assemble the witnesses. After waiver of the investigation, it took only 13 days to move through the pretrial advice, referral and docketing stages and commence trial. Those actions were an adequate response to the appellant's demand for a speedy trial. On this basis, we need not decide the appropriateness of the military judge's relief. The relief, (a six month reduction of confinement) based upon his erroneous conclusion of a *Burton* violation, was a windfall to which appellant was not entitled.

### V. Administrative Credit for Confinement

■ The appellant asserts that the military judge erred in denying "administrative credit to the sentence to confinement for illegal pretrial confinement from 15 October 1979 (the date his Korean sentence was imposed) until 23 September 1980 (the date of his first United States military magistrate review)." The answer to that is simply that the confinement for that period was not pretrial confinement for United States judicial purposes.[12] Nor was it "SOFA" pretrial confinement that required magistrate review for appropriateness under Chapter 17, Army Regulation 27–10. Nor was it unlawful under any regulation of which we are aware, the Korean SOFA (with its Agreed Minutes)[13], any statutes or the United States Constitution. *See Mitchell v. United States,* 483 F.Supp. 291 (E.D.

---

**12.** The period of United States pretrial confinement found by the trial judge to require relief extended from 2 June 1979 until 15 October 1979, a period of 135 days. The basis for the relief ordered was that the appellant had not had the necessary pretrial confinement review by a military magistrate. Apparently, the parties and the trial judge overlooked the period 15 September 1980 until 23 September 1980 wherein his pretrial confinement similarily received no magistrate review. The matter of whether eight days or one (eight less the seven the regulation allows before review is required) should have been ordered to be credited as post-trial confinement served need not detain us. Through administrative error, the convening authority credited 153 days.

**13.** Whether United States military authorities were free under the SOFA to retain the appellant at a level of custody less than confinement pending completion of his Korean appeal is not clear; however, pursuant to a local regulation it is apparently the practice. Assuming they had that discretion, it is abundantly clear that they did not abuse it where the appellant had made clear his aversion to Korean jails and the sentence of the Korean trial court significantly enhanced the likelihood that he would be eventually incarcerated in one. Finally, we note that the appellant apparently did not request deferment of service of his confinement or bail pending appeal from any authority (United States or Korean).

Wis.1980); *Pfeifer v. United States Bureau of Prisons*, 468 F.Supp. 920 (S.D.Calif.1979) aff'd on other grounds, 615 F.2d 873 (9th Cir. 1980). It was confinement imposed by a Korean court that, under the SOFA, could be served in a United States facility. Accordingly, the rule of *United States v. Larner*, 1 M.J. 371 (C.M.A.1976), relied upon by the appellant, is inapposite. The relief fashioned by the military judge based upon fairness and equity was to instruct the court that they should consider that he had been "punished already by serving a period of 11 months ...." The court did so, as is reflected on their sentence worksheet, by deducting eleven months from the confinement they initially deemed appropriate. We hold this to be adequate in the circumstances.

 The appellant also claims that the military judge erred in failing to order administrative credit to be applied against the sentence to confinement for the violation of appellant's right to a speedy trial. As we have concluded in Parts I and IV, above, the appellant was not denied his right to a speedy trial. Accordingly, no administrative credit was appropriate. We note, however, that there is no difference in the "good time" rate prescribed in AR 633–30, Apprehension and Confinement, Military Sentences to Confinement (as changed), for a sentence to confinement of 28 months (the announced confinement with the six month decrement decided upon by the court added back in) and one of 22 months. Accordingly, even if the *Larner* remedy were appropriate here, the result would be the same whether the deduction is applied against the appropriate sentence prior to announcement by the court or applied by the convening authority as a credit against the announced appropriate sentence. We also note in closing that the appellant gained more under the military judge's approach in this case than he would have gained under the *Larner* remedy where approximately a day-for-day credit was applied. The present appellant had his sentence shortened by six months for the 57 day period during which the government failed to respond to the demand for a speedy trial. The appellant is entitled to no further relief.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge GARN concur.