**James Joseph MITCHELL, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

No. 79–C–434.

United States District Court,
E. D. Wisconsin.

Jan. 30, 1980.

Gimbel, Gimbel & Reilly by Thomas E. Brown, Milwaukee, Wis., for petitioner.

Joan F. Kessler, U. S. Atty., by Michael J. Trost, Deputy U. S. Atty., Milwaukee, Wis., Earl Kaplan, Dept. of Justice, Washington, D. C., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This matter is before me for decision on the merits of Mr. Mitchell's petition for a writ of habeas corpus. Since the petitioner is in custody pursuant to the Treaty on the Execution of Penal Sentences, November 25, 1977, United States-Mexico, T.I.A.S. No. 8718 (Treaty), jurisdiction is based on 18 U.S.C. § 3244 (formerly 28 U.S.C. § 2256). For reasons which follow, the writ will be denied, and the petition will be dismissed.

For the purpose of deciding Mr. Mitchell's petition, I will accept his version of the facts, which includes the following:

While on vacation in Mexico in August 1973, the petitioner made the acquaintance of an American couple staying at his hotel. On August 7, 1973, the couple was arrested by Mexican authorities for trafficking in narcotics. The petitioner claims that he had no knowledge of the couple's involvement in drug dealing.

On August 9, 1973, the petitioner was arrested by a group of Mexican police armed with submachine guns. A search of the petitioner and his possessions produced a small amount (ten grams) of marijuana. Without being permitted to contact the American Embassy, Mr. Mitchell was interrogated by the Mexican police for the next six days. The interrogation sessions were conducted in Spanish, although the petitioner spoke no Spanish and was not provided an interpreter.

The purpose of these sessions was to induce Mr. Mitchell to sign a statement confessing his involvement in organized drug trafficking between the United States and Mexico. Over the six day period, the petitioner was denied food and sleep and was continually beaten. He was placed in an electric chair and subjected to shocks. His interrogators applied electric cattle prods to Mr. Mitchell's testicles. On the sixth day, a pistol was placed to the petitioner's forehead, and he was instructed to sign the confession. When he refused to sign, the trigger was pulled but nothing happened. This event concluded the interrogation.

Mr. Mitchell was then transferred to a Mexican prison where he remained until December, 1977. While in prison, he contracted conjunctivitis, which, due allegedly to improper care, has resulted in a permanent and serious loss of sight in both eyes. Additional beatings caused the dislocation of both the petitioner's knees, with permanent damage to the tendon and cartilage.

The petitioner was never tried on the charges against him, but, instead, in February, 1974, seven months after his arrest, he was brought before a clerk of the federal district court in Mexico City. The formal charges included possession and importation of drugs, trafficking in drugs, and acts against the health of the nation. The officers who arrested Mr. Mitchell appeared at this hearing and testified that they had found marijuana and a piece of paper which appeared to contain cocaine residue on the petitioner when they arrested him. The two Americans who had been arrested on August 7th also appeared; their written statements implicating the petitioner in drug trafficking were produced. However, the couple repudiated these written statements, testifying that the statements had been obtained by torture. After the hearing, the petitioner was returned to prison. He was not represented by counsel at this hearing, nor was he provided counsel at the hearing before a court officer in August 1976, when the petitioner was sentenced to ten years in prison. Mr. Mitchell appealed his sentence, but before the appeal got anywhere, he withdrew it on the advice of Mexican officials; they informed him that he could not be transferred to the United States if the appeal was pending.

On December 5, 1977, the petitioner was transferred to the custody of the United States government. On that date, Mr. Mitchell appeared before a federal magistrate, and, represented by counsel, he signed a verification of transfer form in which he consented to be transferred to the United States for execution of the sentence imposed by the Mexican court. At this time, Mr. Mitchell agreed in writing, and showed by oral representations elicited by the magistrate that he understood, that his conviction and sentence could only be challenged in the Mexican courts and that his sentence would be carried out according to the laws of the United States. He also stated that he understood that if a court of the United States determined, in a proceeding brought by him or in his behalf, that his transfer was not accomplished in accordance with the Treaty or laws of the United States, he could be returned to Mexico to serve the remainder of his Mexican sentence.

The petitioner was paroled on January 26, 1978. On June 14, 1979, the petitioner's parole was revoked because the petitioner had left the district without permission, had failed to report a change of address, and had failed to submit supervision reports. The petitioner was reparoled on November 3, 1979.

Mr. Mitchell filed the instant petition on June 12, 1979. His petition, the government's return and answer, and supporting memoranda filed by both parties, raise the following issues: (1) May the petitioner attack his Mexican conviction and sentence? (2) May the government take custody of Mr. Mitchell to enforce his Mexican sentence? The petitioner has also challenged the constitutionality of certain Treaty provisions and provisions of the statute implementing the Treaty. *See* 18 U.S.C. §§ 4100–4115. I will consider these challenges in connection with my resolution of the two issues just described.

## I. THE ATTACK ON THE MEXICAN CONVICTION

Mr. Mitchell's attack on his Mexican conviction must fail for three reasons. First, Article VI of the Treaty states that:

"The Transferring State [Mexico] shall have exclusive jurisdiction over any proceedings, regardless of their form, intended to challenge, modify or set aside sentences handed down by its courts. . . ."

In similar language, Congress had codified the principle of the exclusive jurisdiction of the courts of the transferring state in 18 U.S.C. § 3244(1); this provision includes challenges to foreign convictions as well as foreign sentences.

The petitioner's constitutional challenge to Article VI is meritless. The Supreme Court's observation in *Wilson v. Girard*, 354 U.S. 524, 529, 77 S.Ct. 1409, 1412, 1 L.Ed.2d 1544 (1957), in which it was held that the courts of Japan had jurisdiction to try an American soldier for murder, is pertinent here: "A sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, . . ." Moreover, it is in the interests of this country to have American citizens serve their sentences here rather than in foreign countries, as the allegations in this case forcefully demonstrate. Since foreign governments would be unlikely to consent to the transfer of American citizens serving sentences in their countries imposed pursuant to convictions obtained in their courts if this country were free to disregard such convictions and sentences, it cannot be doubted that the jurisdictional exclusivity principle is a proper subject of the treaty power. *See Asakura v. Seattle*, 265 U.S. 332, 341, 44 S.Ct. 515, 516, 68 L.Ed. 1041 (1924); *Geofroy v. Riggs*, 133 U.S. 258, 267, 10 S.Ct. 295, 297, 33 L.Ed. 642 (1890). *See also* H.R.No.95–720, 1977 U.S.Code Cong. & Admin.News, pp. 3146, 3149; Restatement (Second) of the Foreign Relations Law of the United States § 117. Article VI and its statutory counterpart do not offend any express constitutional provision; rather, the Constitution expressly empowers Congress to regulate the jurisdiction of the lower federal courts. *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850).

Even if jurisdiction were available on some other basis, the Mexican conviction and sentence are immune from constitutional attack in this court. As the Supreme Court stated long ago, the Constitution has ". . . no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country. . . . When an American citizen commits a crime in a foreign country, he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people, . . ." *Neely v. Henkel*, 180 U.S. 109, 122–23, 21 S.Ct. 302, 307, 45 L.Ed. 448 (1901).

Moreover, I believe the petitioner has waived whatever right he may have to challenge his Mexican conviction in this court. Contrary to Mr. Mitchell's present assertions, after reviewing the record of the magistrate's hearing on December 5, 1977, I find that the petitioner did knowingly and voluntarily agree not to challenge his conviction and sentence in the courts of the United States. Relying on *Velez v. Nelson*, 475 F.Supp. 865 (D.Conn.1979), the petitioner argues that this consent was not voluntarily given since he would have agreed to nearly anything to secure his release from the Mexican prison. This fact alone, however, does not vitiate the voluntariness of the consent, since the Constitution does not forbid "the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). *See also Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978).

After discussing the terms of his consent to transfer with his appointed counsel, and after being fully advised by the magistrate of those terms, the petitioner signed the form stating that he could only challenge his foreign conviction and sentence in Mexico; this voluntary act precludes him from attacking the conviction here. I find no merit in the petitioner's challenge to 18 U.S.C. § 4108(b)(1) and (b)(2), which set forth two of the three conditions of transfer.

In the face of these barriers to this court's review of Mr. Mitchell's foreign conviction and sentence, the petitioner attempts to open an avenue of attack by suggesting that certain agreements between American and Mexican authorities encouraged the treatment he received in Mexico. Mr. Mitchell does not contend that American officials participated in his arrest and interrogation but asks for an evidentia-

ry hearing for the purpose of producing the alleged agreements, which, according to the petitioner, "provided substantial inducements and rewards to the Mexican government for the apprehension and 'conviction' of suspected smugglers of narcotics into the United States." Reply Brief at 9.

In my opinion, the existence of such agreements between the United States and Mexico would not warrant the conclusion that the government has induced or encouraged Mexican officials to act as they allegedly have acted in this case. In the absence of an allegation that American authorities controlled or supervised the Mexican officials involved, or otherwise participated directly in the alleged events, this court has no basis to inquire further. *See United States v. Lira*, 515 F.2d 68, 71 (2d Cir. 1975), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1976); *United States v. Stonehill*, 405 F.2d 738, 742–46 (9th Cir. 1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *Pfeifer v. United States Bureau of Prisons*, 468 F.Supp. 920, 924 (S.D.Cal.1979).

## II. THE GOVERNMENT'S POWER TO ENFORCE FOREIGN SENTENCES

The petitioner contends that the Constitution forbids the government to incarcerate an American citizen for execution of a foreign sentence imposed after a foreign trial which did not comply with the Bill of Rights. This argument has been considered and rejected by two federal district courts also presented with habeas corpus petitions filed by transferees under the American-Mexican Treaty. *See Isbell v. United States Bureau of Prisons*, CV 78–2400–LEW(T) (C.D.Cal. July 30, 1979); *Pfeifer v. United States Bureau of Prisons, supra*, 468 F.Supp. at 923–24 (relying on *Holmes v. Laird*, 148 U.S.App.D.C. 187, 459 F.2d 1211 (D.C.Cir.), *cert. denied*, 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972) ). For the reasons there stated, I reject the petitioner's contention.

Finally, I find no merit in the petitioner's constitutional challenge to Article II, § (6) of the Treaty, which merely pro-

vides that a transfer cannot be accomplished as long as an appeal is pending in the transferring state. Clearly, this provision has no relevance to the government's power to take custody of the petitioner to enforce his Mexican sentence.

### CONCLUSION

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus and this action be and hereby are dismissed.