UNITED STATES, Appellee,

v.

Ron E. MILLER, Specialist Four, U.S. Army, Appellant.

No. 42903.

CM 440526.

U.S. Court of Military Appeals.

Aug. 15, 1983.

For Appellant: *Captain Marcus C. McCarty* (argued); *Colonel Edward S. Adamkewicz, Jr., Colonel William G. Eckhardt, Major Raymond C. Ruppert, Major Paul J. Luedtke, Captain Thomas R. Peppler* (on brief); *Major Joyce E. Plaut, Major Robert C. Rhodes.*

For Appellee: *Captain Michael S. Child* (argued); *Colonel R.R. Boller, Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Kenneth H. Clevenger, Captain Michael R. Smythers, Captain Mark S. Julius, Captain David A. Brown* (on brief); *Major John T. Meixell, Captain Glenn D. Gillett.*

*Opinion of the Court*

COOK, Judge:

Tried by general court-martial, the accused was convicted, pursuant to his pleas,

of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 U.S.C. § 919.[1] He was sentenced to confinement at hard labor for 22 months, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the findings and sentence and credited an additional 153 days of illegal pretrial confinement against the sentence to confinement at hard labor. The Court of Military Review affirmed the approved findings and sentence. *United States v. Miller,* 12 M.J. 836 (1982).

The basis for the prosecution of the accused was the killing of Sin Suk Chol, a Korean national and the accused's paramour, on June 1, 1979. Preliminary investigation implicated the accused, who subsequently confessed to the killing. On June 14, 1979, the Republic of Korea notified authorities of the Army that they would exercise jurisdiction over the accused under the provisions of Article XXII of the Agreement Under Article IV of the Mutual Defense Treaty Between the United States of America and the Republic of Korea, Regarding Facilities and Areas and the Status of United States Armed Forces in the Republic of Korea (hereinafter cited as SOFA).[2] Pursuant to the SOFA agreement

1. The accused was arraigned on a charge of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. The Charge was amended at trial to allege the offense of which he was convicted.

2. 17 U.S.T. 1677, T.I.A.S. 6127 (effective date—February 9, 1967). The pertinent provisions are:

   1. Subject to the provisions of this Article,
      (a) the military authorities of the United States shall have the right to exercise within the Republic of Korea all criminal and disciplinary jurisdiction conferred on them by the law of the United States over members of the United States armed forces or civilian component, and their dependents;
      (b) the authorities of the Republic of Korea shall have jurisdiction over the members of the United States armed forces or civilian component, and their dependents, with respect to offenses committed within the territory of the Republic of Korea and punishable by the law of the Republic of Korea.
   2. (a) The military authorities of the United States shall have the right to exercise exclusive jurisdiction over members of the United States armed forces or civilian component, and their dependents, with respect to offenses, including offenses relating to its security, punishable by the law of the United States, but not by the law of the Republic of Korea.
      (b) The authorities of the Republic of Korea shall have the right to exercise exclusive jurisdiction over members of the United States armed forces or civilian component, and their dependents, with respect to offenses, including offenses relating to the security of the Republic of Korea, punishable by its law but not by the law of the United States.
      (c) For the purpose of this paragraph and of paragraph 3 of this Article, a security offense against a State shall include:
         (i) treason against the State;
         (ii) sabotage, espionage or violation of any law relating to official secrets of that State, or secrets relating to the national defense of that State.
   3. In cases where the right to exercise jurisdiction is concurrent the following rules shall apply:
      (a) The military authorities of the United States shall have the primary right to exercise jurisdiction over members of the United States armed forces or civilian component, and their dependents, in relation to:
         (i) offenses solely against the property or security of the United States, or offenses solely against the person or property of another member of the United States armed forces or civilian component or of a dependent;
         (ii) offenses arising out of any act or omission done in the performance of official duty.
      (b) In the case of any other offense, the authorities of the Republic of Korea shall have the primary right to exercise jurisdiction.
      (c) If the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable. The authorities of the State having the primary right shall give sympathetic consideration to a request from the authorities of the other State for a waiver of its right in cases where that other State considers such waiver to be of particular importance.
            *    *    *    *    *    *
   5. (b) The authorities of the Republic of Korea shall notify promptly the military authorities of the United States of the arrest of any member of the United States armed forces, or civilian component, or a dependent. The military authorities of the United States shall promptly notify the authorities of the Republic of Korea of the arrest of a member of the United States armed forces, the civilian com-

between the two Governments.[3] the accused, who was then in military pretrial confinement, was administratively changed to "SOFA confinement." The accused was indicted for murder on July 3, 1979; was tried and convicted by the Seoul Criminal District Court on September 10 and 24, 1979; and was sentenced on October 15, 1979. On October 26, 1979, martial law was declared throughout the Republic of Korea and remained in effect for all pertinent times since. On September 15, 1980, the Seoul High Court (intermediate appellate court) dismissed charges against the accused on the ground that the Republic of Korea was without jurisdiction to proceed further with the accused's case and returned jurisdiction to the United States.

At a pretrial hearing the accused's civilian defense counsel moved to dismiss the charges on the ground that trial was barred by Article XXII, paragraph 8 of the SOFA agreement.[4] The military judge denied the motion and his ruling was upheld by the Court of Military Review.

We granted review of the following issue: WHETHER THE MILITARY JUDGE ERRED IN FAILING TO DISMISS THE CHARGE AND ITS SPECIFICATION AS THE UNITED STATES HAD NO JURISDICTION TO TRY THE APPELLANT.

We find no error and affirm.

This case presents an issue facially similar to that decided in *United States v. Green*, 14 M.J. 461 (C.M.A.1983). There we had occasion to interpret language appearing in the NATO Status of Forces Agreement which was identical to that in the Korean SOFA. We held that although Article 44, UCMJ, 10 U.S.C. § 844, and paragraph 215*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), establish no bar to subsequent trial by court-martial for offenses of which the accused has been convicted under foreign law since

ponent, or a dependent in any case in which the Republic of Korea has the primary right to exercise jurisdiction.
17 U.S.T. at 1695–96.

3. SOFA, Article XXII, paragraph 5(c), provides:
The custody of an accused member of the United States armed forces or civilian component, or of a dependent, over whom the Republic of Korea is to exercise jurisdiction shall, if he is in the hands of the military authorities of the United States, remain with the military authorities of the United States pending the conclusion of all judicial proceedings and until custody is requested by the authorities of the Republic of Korea. If he is in the hands of the Republic of Korea, he shall, on request, be handed over to the military authorities of the United States and remain in their custody pending completion of all judicial proceedings and until custody is requested by the authorities of the Republic of Korea. When an accused has been in the custody of the military authorities of the United States, the military authorities of the United States may transfer custody to the authorities of the Republic of Korea at any time, and shall give sympathetic consideration to any request for the transfer of custody which may be made by the authorities of the Republic of Korea in specific cases. The military authorities of the United States shall promptly make any such accused available to the authorities of the Republic of Korea upon their request for purposes of investigation and trial, and shall take all appropriate measures to that end and to prevent any prejudice to the course of justice. They shall take full account of any special request regarding custody made by the authorities of the Republic of Korea. The authorities of the Republic of Korea shall give sympathetic consideration to a request from the military authorities of the United States for assistance in maintaining custody of an accused member of the United States armed forces, the civilian component, or a dependent.
17 U.S.T. at 1696–97.

4. SOFA, Article XXII, paragraph 8:
Where an accused has been tried in accordance with the provisions of this Article either by the military authorities of the United States or the authorities of the Republic of Korea and has been acquitted, or has been convicted and is serving, or has served, his sentence, or his sentence has been remitted or suspended, or he has been pardoned, he may not be tried again for the same offense within the territory of the Republic of Korea by the authorities of the other State. However, nothing in this paragraph shall prevent the military authorities of the United States from trying a member of its armed forces for any violation of rules of discipline arising from an act or omission which constituted an offense for which he was tried by the authorities of the Republic of Korea.
17 U.S.T. at 1698.

there would be an offense against the laws of both sovereigns, such retrial "may be limited by treaty or international agreement." Para. 215*b*, Manual, *supra*. We decided that the language of the NATO/SOFA "preclude[d] a trial for the same offense by the other contracting party—a recognition of the principle of 'no double jeopardy,'" except in some exceptional case where the "offense . . . could independently affect the discipline of the sending state's armed forces." *United States v. Green, supra* at 463–64. We further decided that an accused had standing to contest a violation of the double-jeopardy portion of the NATO/SOFA. *Id.* at 464, and cases cited thereat. Since there is no question that the same killing provided the basis for the charges in both trials, if there was nothing more, we could easily decide this case by applying the *Green* rationale. But there is more.

In the Agreed Minutes[5] to the ROK SOFA Agreement, the following interpretation of Article XXII appears:

Re Paragraph 1(b)

1. In the event that martial law is declared by the Republic of Korea, the provisions of this Article shall be immediately suspended in the part of the Republic of Korea under martial law, and the military authorities of the United States shall have the right to exercise exclusive jurisdiction over members of the United States armed forces or civilian component, and their dependents, in such part until martial law is ended.

\*　　\*　　\*　　\*　　\*　　\*

Re Paragraph 9(a)

A member of the United States armed forces, or civilian component, or a dependent, shall not be tried by a military tribunal of the Republic of Korea.

These provisions are without model in the NATO/SOFA, a matter no doubt explained by the fact that at the time of the negotiation of the Korean SOFA as well as now, that country was still in a state of war suspended only by a cease-fire agreement with the Democratic Peoples Republic of Korea.

In its judgment[6] dismissing the charges against the accused by virtue of the decla-

---

5. These "Minutes" "record the following understanding which . . . [was] reached during the negotiations for the Agreement." Preamble to Agreed Minutes.

6. Article 327, paragraph 1 of the Code of Criminal Procedure, provides:

(Judgment Dismissing Public Action) Public action shall be dismissed by judgment in the following cases:

1. Where the court has no jurisdiction over the accused.

The Korean Legal Center, *Laws of the Republic of Korea* 749 (3d ed. January, 1975).

On September 9, 1980, the Supreme Court took the following action in a case procedurally similar to that of the accused (PFC Robert E. Nimmo):

Decision: *Original court's decision is set aside. Prosecution of this case is dismissed.* Reason: Review of the defendant's records by this court revealed that the defendant was indicted for robbery resulting in injuries, in that the defendant, a member of Btry B, 6th Bn, 37th FA, 2d Inf Div, did: With intent to commit robbery in concert with two other unidentified US soldiers, on or about 23 March 1978, at about 2110 hours, on the road in front of the Kanung Police Box at Kanung-dong, Uijongbu-city, Kyongki-do, get into the taxi Kyongki-1-Ba-6951, driven by the victim named TO Hyang Hui (male, age 23) under the disguise of being passengers and demand that he drive toward the Hakumo-ri area. While the victim was driving the taxi along the secluded road behind the Taesung Lumber Mill at 345–2 Jakum-dong, in the same city, one unidentified suspect in the rear seat suddenly began to wring the victim's neck, strike him on the face with his fist and demand that the victim to stop the car. Simultaneously with these actions, the other unidentified suspect in the rear seat robbed the victim of money in the amount of 22,000 won from the left pocket of the victim's coat, and the defendant, who was seated beside the victim, beat the victim in the face with a stick approximately 10 times thereby making him unable to resist and inflicting injuries to wit: Concussion of the brain, etc. which required three weeks of medical treatment. Paragraph 1(a), Article XXII of the Agreement Under Article IV of the Mutual Defense Treaty Between the United States of America and the Republic of Korea, Regarding Facilities and Areas and the Status of United States Armed Forces in the Republic of Korea, provides that the US military authorities

ration of martial law, the Seoul High Court gave as its reason:

> Reason: It is apparent from the record of trial that the defendant was indicated [sic] (the facts of the crime are attached), and was found guilty by the lower court. Although the Republic of Korea has the primary right to exercise criminal jurisdiction over the crimes committed by a US forces member, such as this case, pursuant to paragraph 1(b) and 3(b), Article XXII of the Agreement Under Article IV of the Mutual Defense Treaty Between the United States of America and the Republic of Korea, Regarding Facilities and Areas and the Status of United States Armed Forces in the Republic of Korea, the provisions of the Agreed Minutes to Article XXII of the Agreement provide that in the event that martial law is declared by the Republic of Korea the provisions of Article (Article XXII) shall be immediately suspended on [sic] the part of the Republic of Korea under martial law, and the US military authorities shall have the exclusive right to jurisdic-

tion. At present, it is a widely known fact that the Republic of Korea is under martial law and is in receipt of a letter from the US Chairman of the Criminal Jurisdiction Subcommittee of the US–ROK Joint Committee, to the Republic of Korea Government, informing them that *the US military authorities will exercise its exclusive right to jurisdiction over this case.* Consequently, it is concluded that the Republic of Korea has no further right to jurisdiction over this case, and therefore, the conviction by the lower court is set aside, in accordance with paragraph 2, Article 364, Code of Criminal Procedure and all charges are hereby dismissed, in accordance with paragraph 1, Article 327, Code of Criminal Procedure.

(Emphasis added.)

The question we must resolve is the effect of this action by the Seoul High Court on the trial of the accused under the provisions of Article XXII, paragraph 8, for if the accused has been "tried" and "has been

---

shall have the right to exercise, within the ROK, all criminal and disciplinary jurisdiction conferred on them by the law of the United States, while paragraph 1(b) provides that the ROK authorities shall have the right to jurisdiction over the members of the US armed forces with respect to offenses committed within the territory of the ROK and punishable by the law of the ROK. Paragraph 3 of the Agreement provides that in cases where the right to exercise jurisdiction is concurrent, the US military authorities shall have the primary right to exercise jurisdiction in relation to (1) offenses solely against the property or security of the US or offenses solely against the person or property of another member of the US armed forces, or civilian component or of a dependent, and (2) offenses arising out of any act or omission done in the performance of official duty and the ROK authorities shall have the primary right to exercise jurisdiction in all other offenses. Accordingly, if not for other reasons, it is clear that the ROK has the primary right to exercise jurisdiction over this particular case which falls under paragraph 3(b), Article XXII of the Agreement. However, the Agreed Minutes to paragraph 1(b) of Article XXII of the Agreement provides that in the event that martial law is declared by the ROK, the provisions of Article XXII are immediately suspended in the part of the ROK

under martial law, and the US military authorities shall have the right to exercise exclusive jurisdiction over members of the US armed forces in such part until martial law is ended. This means that in the event martial law is declared in the ROK, application of the provision of the Agreement which provides the basis for the right of jurisdiction by the ROK is suspended in the area under martial law and the ROK courts have no jurisdiction over members of US armed forces until the martial law is ended. Accordingly, the jurisdiction by the ROK courts over those cases of members of US armed forces which were indicted prior to the declaration of martial law and were pending before the ROK courts, shall no longer be in existence once martial law is declared. This being so, it is apparent that a ROK court has no right to try the defendant in this case at this time as martial law has been declared throughout the ROK. The prosecution of this case should therefore be dismissed in accordance with paragraph 1, Article 327, Code of Criminal Procedure without discussion of the merits of the appeal, a brief for which has been filed by the defense counsel. Accordingly, the decision of the original court is set aside and the prosecution is hereby dismissed by unanimous decision of the participating justices. The foregoing is so adjudged.

convicted and is serving . . . his sentence . . . he may not be tried again for the same offense within the territory of the Republic of Korea by the authorities of the" United States. Resolution of the question is made more difficult by the fact that the common law definition of "tried" is not directly applicable to the trial procedures of the Korean court system, which is more akin to the civil (or European) codal system.

The Country Law Study-Korea, Headquarters, United States Forces, Korea/Eighth United States Army, Seoul, Korea, offers this explanation of an appeal from the judgment [7] or orders or ruling of a court of original jurisdiction:

> There are two types of appeals: appeals from a judgment of either the collegiate court of a District Court to a High Court or from a judgment of a single judge court of a District Court to its appellate division, and appeals from orders or rulings of the court of original jurisdiction (Articles 357, 402). If a single judge acted for the District Court, the first appeal is to the appellate division of that District. If a collegiate court first acted, the initial appeal is to the High Court. Either the prosecutor or the accused may appeal from a judgment of the District Court by filing an appeal with that court within seven days (Articles 357–359). The first appeal results in a hearing *de novo;* remands do not occur. The judgment of the court of second instance (Appellate Division of a District Court or of the High Court) may be appealed to the Supreme Court (Article 371). In certain instances an appeal may be made directly to the Supreme Court from a District Court without filing an appeal to the

High Court (Article 372). In general, only questions of law can be raised on appeal to the Supreme Court.

In the Supplement to Country Law Study —Korea, dated May 23, 1974, the proclamation of a new Constitution on December 27, 1972, was discussed. That Supplement notes that:

> [T]he President can order trial of private citizens by courts-martial, which was possible only in case of martial law under the old Constitution. One of the reasons for conferring exclusive jurisdiction upon the United States during the martial law period under Agreed Minutes to the US–ROK SOFA regarding Paragraph 1(b) of Article XXII was to avoid trial of USFK personnel by [Korean] courts-martial.

■ From the law and precedents available to us,[8] several conclusions can be drawn. First, trial in the Korean system is not complete until the case has been acted upon by the Supreme Court of Korea or time for appeal has elapsed. Up to that point there is no final "judgment" to which the principle of double jeopardy would apply. This is not especially different from the continental system where investigation, initial trial, and first appeal all involve, or may involve, oral hearings and the taking of statements and consideration of evidence before some judicial tribunal. As an example, an appeal by the prosecution from a judgment of acquittal or not guilty does not amount to double jeopardy since the "appeal" is but a continuation of the proceedings, and the trial is not complete until action by the Supreme Court (unless the time for appeal has expired). Appeal to the Supreme Court is based only on legal, as contrasted to factual, matters. This first level appeal for

---

7. Article 37 of the Code of Criminal Procedure, provides:
   (Judgment, Ruling and Order) (1) A judgment shall be rendered on the basis of oral proceedings except as otherwise provided in this Code.
   (2) A ruling or an order shall not necessarily be based upon oral proceeding.
   (3) In making a ruling or order, the court may, whenever necessary, make examination of facts.

   (4) The examination mentioned in the preceding paragraph may be assigned to a member of a collegiate court concerned, or another district court may be requisitioned.

8. We have been provided with certain classified documents relating to the negotiating history of Article XXII. We have found nothing there inconsistent with the interpretation we adopt.

a trial *de novo* is not as shocking as it might appear since even under our jurisprudence there is no bar to a retrial of a defendant after reversal by an appellate court.

Second, it appears quite clear that the Korean court believed that their action dismissing the charges restored jurisdiction to the Army to try the accused for murder. Whether this is based upon their interpretation of their own legal system or whether they believed that the agreed minute to paragraph 1(b) suspended the entirety of Article XXII including paragraph 8 is not clear. However, their interpretation of their own law is entitled to great weight in this Court. Their view is consistent with the civil law practice. There is no doubt that had the Proclamation of Martial Law occurred prior to commencement of trial, the authorities of the Army would have been free to prosecute the accused just as if there had been a waiver of jurisdiction by the Republic of Korea after it had initially exercised its right to take jurisdiction over the case. The fact that the case had proceeded to the initial sentencing phase does not, at least in the view of the Korean court, amount to the sort of "judgment" envisioned by paragraph 8. Thus we may conclude that the Korean court saw no bar to trial by the Army and, indeed, expected a trial. It is only if we apply our own concept of jeopardy that the strictures of paragraph 8 would come into play.

■ We conclude that we should follow the Korean interpretation of their own practice. Failure to do so would seem to fly in the face of the clear intention of the treaty and would possibly harm relations with the receiving state. Clearly, the Koreans did not intend that the accused should be immune from punishment for the killing of one of their nationals. Just as clearly, the request for suspension of the case pursuant to the agreed minute to paragraph 1(b) was designed to protect the accused from unfair treatment by Korean courts because of the suspension of certain fundamental rights by virtue of the Proclamation of Martial Law. Neither party intended that the accused should go free; both parties intended that jurisdiction by Korea would be ended, but that the concurrent jurisdiction of the United States would continue.[9] We should attempt where possible to effectuate the intentions of the parties to the treaty unless clearly in violation of the United States Constitution. No such clear violation occurred in this case.

■ Consequently, we hold that the action of the High Court of Seoul dismissing the charges against the accused voided the entire proceedings up to that point and that for the purposes of paragraph 8 of Article XXII there was no trial or service of sentence or judgment to which jeopardy attached. There was no treaty bar to trial by court-martial of the accused for the killing of Sin Suk Chol.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

9. It should be understood that the SOFA gives both States jurisdiction *concurrently* over members of the sending State's forces for crimes committed within Korea. However, the *exercise* of that jurisdiction is dependent upon which party has the primary right to try the offender as set forth in the agreement. *See* n. 2, *supra* at para. 3.